# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS HAWK and CATHY HAWK | : |
| | : |
| Plaintiffs, | : |
| v. | : 3:14-CV-1044 |
| | : (JUDGE MARIANI) |
| CARRINGTON MORTGAGE SERVICES, LLC, and CHRISTIANA TRUST, et al., | : |
| | : |
| Defendants. | : |

## MEMORANDUM OPINION

Presently before the Court are two Reports and Recommendations ("R&R") by Magistrate Judge Carlson. In the First R&R, (Doc. 46), Magistrate Judge Carlson recommends granting Defendant Christiana Trust's ("CT") Motion for Summary Judgment. In the Second R&R, (Doc. 47), Magistrate Judge Carlson recommends granting Defendant Carrington Mortgage Services, LLC's ("Carrington") Motion for Summary Judgment. The Plaintiffs, Douglas and Cathy Hawk, have filed Objections to both R&Rs. (Docs. 48, 50). Defendant Carrington has filed a Limited Objection "to the extent that the Magistrate Judge suggests that Plaintiffs be allowed to amend their Complaint—or seek to amend their Complaint—at a time where pleadings are closed, discovery is complete, and summary judgment motions filed and decided." (Doc. 49, at 1). Upon *de novo* review of Magistrate Judge Carlson's R&Rs, the Court will overrule Plaintiffs' Objections and adopt the R&Rs for

the reasons that follow. In addition, the Court will sustain Defendant Carrington's Limited Objection and Plaintiffs will not be permitted to amend their complaint.

## I.  CHRISTIANA TRUST'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs object to the Magistrate Judge's First R&R, asserting that Defendant CT should be vicariously liable on its claim under the Real Estate Settlement Procedures Act ("RESPA"). (Doc. 48). Plaintiffs raise no objection, however, to the Magistrate Judge's recommendation that the Court grant CT's Motion For Summary Judgment with respect to their pendent state law claims. (*Id.*).

In concluding that CT, the holder of the Hawk's mortgage, is entitled to summary judgment, the Magistrate Judge found, after citing the relevant statutory provisions, that:

> [A] RESPA claim does not lie against Christiana Trust on these facts, as alleged by the plaintiffs. RESPA is a federal consumer protection statute applicable to mortgage lending. In part, RESPA requires lenders to refrain from collecting unearned closing fees and kickbacks; compels lenders to disclose to borrowers the fact that servicing on their loans may be transferred; and requires loan servicers to respond in a timely fashion to 'Qualified Written Requests' from borrowers seeking information regarding the status of home loans. 12 U.S.C. § 2607.

(Doc. 46, at 7-8). The Magistrate Judge further found, in relevant part, that:

> [B]y its terms Section 2605 only imposes a duty upon loan servicers to respond to qualified written requests. 12 U.S.C. § 2605. Likewise the regulations enacted pursuant to RESPA speak solely in terms of loan servicers. . . . Given this plain statutory text, it has been held that mortgage holders, who are not servicing loans, are not liable under RESPA for the alleged conduct of loan servicers. *See, e.g., Green v. Cent. Mortg. Co.*, No. 3:14 CV 04281 LB, 2015 WL 7734213, at *15 (N.D. Cal. Dec. 1, 2015); *Bennett v. Nationstar Mortg., LLC*, No. CV 15-00165-KD-C, 2015 WL 5294321, at *10 (S.D. Ala. Sept. 8, 2015); *McAndrew v. Deutsche Bank Nat'l Trust Co.*, 977 F. Supp. 2d 440, 445 (M.D. Pa. 2013), *But see Rouleau v. US Bank, NA*, No. 14-CV-568 JL, 2015 WL 1757104, at *7 (D.N.H. Apr. 17, 2015).

2

> With one exception, *Rouleau v. US Bank, NA, supra*, these courts have rejected efforts to expand RESPA liability under § 2605 beyond the limits expressly set by statute, which only governs loan servicers, and impose vicarious liability upon loan holders as well. . . . We believe that this emerging majority position reflects the better view on this question regarding the scope and reach of RESPA. This position pays fidelity to the language used by Congress, language which spoke specifically and repeatedly about obligations owed by loan servicers when responding to consumers' qualified written requests. Congress presumably meant what it said in enacting RESPA, and to write an entirely new class of defendants into this statute would be an unwarranted intrusion into legislative prerogatives. In fact, when Congress chose in RESPA to extend liability beyond loan servicers to others, it did so clearly and explicitly. For example, RESPA's anti-kickback provision is cast broadly and plainly states that "no person" shall engage in this forbidden conduct. *See* 12 U.S.C. § 2607. Thus, it is unmistakably clear that when Congress wished to craft prohibitions of general application in RESPA it did so in clear and precise terms. Congress' ability and willingness in RESPA to draft some provisions of the law globally buttresses the growing legal consensus that the legislature's restrictions of § 2605 to loan servicers was an intentional, considered act which should not be lightly cast aside by the Courts. Given this evident expression of legislative intent, until Congress elects to extend civil RESPA culpability under § 2605 to loan holders who play no role in loan servicing we should decline to extend this liability to a class of defendants who are not mentioned in this provision of the statute.

(Doc. 46, at 9-11).

In its Objection, Plaintiffs request that the Court adopt the rationale of the New Hampshire District Court in *Rouleau* and hold Defendant CT, the mortgage holder who plays no role in loan servicing, liable under RESPA. Upon review of the applicable statute and case law, the Court agrees with the Magistrate Judge's thoughtful and well-reasoned recommendation and rejects the Plaintiffs argument.[1] This argument, based as it is on

---

[1] In addition to the reasons stated by the Magistrate Judge, the Court finds *Rouleau* unavailing because the opinion was issued in response to a motion to dismiss, not on a motion for summary judgment. Indeed, the Court clarified its vicarious liability holding, noting that "it is open to revisiting that conclusion in a different procedural context if U.S. Bank is able to identify some evidence in the statutory language evincing a Congressional intent to the contrary." *Rouleau*, 2015 WL 1757104, at *8. Moreover, Plaintiffs

3

general principles of agency, cannot overcome Congress's expressed legislative intent to impose a duty on "any servicer of a federally funded mortgage loan" to respond to a "qualified written request from the borrower," 12 U.S.C. § 2605(e), and to create a cause of action in § 2605(e) as to "whoever fails to comply with any provision of this section. . . ." There is nothing in the language of RESPA that may be read to extend statutory liability to the passive mortgage holder, however salutary such a provision might be had it been included in the Act. Furthermore, even if the Court were to assume that Defendant CT could be vicariously liable on an agency theory of liability, the Court's review of the record reveals that Plaintiffs offer nothing but conjecture and conclusory statements in support of its agency theory of liability.[2] Moreover, notwithstanding our conclusion that RESPA limits

---

assert that neither *Green* nor *McAndrew* addressed vicarious liability under RESPA. (Doc. 48, at 3). While neither case directly mentions "vicarious liability," the *Green* court nevertheless concluded that the RESPA provisions at issue "apply only to loan servicers and do not apply to beneficiaries such as Deutsche Bank." *Green*, 148 F. Supp. 3d 852, 877 (N.D. Cal. 2015). And *McAndrew* plainly held that the plaintiff's claim against the loan holder was "*not actionable*" because Section 2605(e) applies only to loan servicers. *McAndrew*, 977 F. Supp. 2d 440, 445 (M.D. Pa. 2013) (emphasis added).

[2] Assuming that vicarious liability applies to claims under RESPA, it was Plaintiffs' burden to set forth facts from which a reasonable jury could conclude that an agency relationship existed between the Defendants. Plaintiffs have not set forth specific facts to demonstrate that the principal, CT, "by words or conduct" lead them to reasonably believe that the principal "granted the agent authority he or she purports to exercise." *Turner Hydraulics, Inc. v. Susquehanna Constr. Corp.*, 606 A.2d 532, 534 (Pa. Super. 1992). Indeed, the Hawks acknowledge CT "was not their loan servicer and played no active role in any of the events alleged in their complaint." (Doc. 46, at 7). Notably, the entirety of Plaintiffs' argument in support of its agency theory of liability (without *any* citation to the evidentiary record) is as follows:

> Under general rules of agency law, principals are liable when their agents act with apparent authority. . . . Here, Defendant Carrington was servicing a loan on behalf of Defendant Christiana. Christiana recites *McAndrew v. Deutsche Bank Nat'l Trust*, 977 F. Supp. 2d 440 (M.D. Pa. 2013). However, *McAnderw* [sic] is distinguishable from the current case. *McAndrew* addressed whether the R.E.S.P.A. violation could be held directly

4

liability to loan servicers and does not extend to mortgage holders, we find that even if we were to accept Plaintiffs' argument that vicarious liability is permissible or available under § 2605(e) so as to allow the cause of action against the mortgage holder, in this case, for the reasons set forth *infra* Part II, we have determined that summary judgment should properly be entered in favor of Defendant Carrington with the result that no vicarious liability claim can be made against CT in any event. Accordingly, Plaintiffs' Objections to the First R&R will be overruled, and summary judgment will be entered in favor of Defendant Christiana Trust. A separate order follows.

## II. **CARRINGTON MORTGAGE SERVICES' MOTION FOR SUMMARY JUDGMENT**

The Court next addresses Plaintiffs' Objections to the Second R&R, where the Magistrate Judge concluded that the Court should grant Defendant Carrington's Motion For Summary Judgment. The Hawks "object to Section B of the Honorable Judge Carlson's

---

> against the loan holder when a loan servicer was used. Here, the Plaintiffs' are not asserting direct liability but rather vicarious liability, through Carrington.
>
> Under apparent authority theory, liability is based upon the fact that the agent's position facilitated the harm. . . . Here Carrington was servicing the loan on behalf of Christiana. Carrington had the apparent authority from Christiana to do as much. Carrington failed to comply with federal regulations regarding the servicing of loan, and therefore Christiana should be held liable for Carrington's failures. Similarly, a principal is liable for an agent's misrepresentations that cause pecuniary loss to a third party, when the agent acts within the scope of his apparent authority.
>
> The Plaintiffs' have alleged in their complaint that Carrington was Christiana's agent during the period at issue here. Christiana has not disputed this claim or attached evidence to refute it. As such, this allegation must be viewed in the light most favorable to the defendant. Therefore, it is possible for a reasonable trier of fact to find for the Plaintiffs on the R.E.S.P.A. violation and Christiana's motion for summary judgment should be denied.

(Doc. 41, at 2-3).

5

discussion where he found that Carrington Mortgage Service was entitled to Summary Judgment on the Plaintiffs' RESPA claim for lack of alleged damages."[3] (Doc. 50, at 1); (Doc. 50-1, at 2-3). In support of its argument, the Plaintiffs direct the Court to the allegations of the complaint. (Doc. 50, at 1-2). But it is well-settled that on a motion for summary judgment the Plaintiffs cannot simply rely on the allegations in the complaint. *See Jackson v. Taylor*, 467 F. App'x 98, 99-100 (3d Cir. 2012) (noting that the Plaintiff "did not go beyond the pleadings and point to evidence supporting his argument, as he was required to do to survive a summary-judgment motion") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).[4]

In addition, in support of their argument that they incurred actual damages caused by the RESPA violation, the Hawks assert (without any citations to the record) that:

> At all times relevant the Hawks had the funds available to bring their mortgage current. However, they were never able to obtain the documents needed from Carrington. The Hawks alleged in the complaint that they were trying to avoid foreclosure on their home, that they were disputing portions of the forced placed flood insurance on the property, and that they were questioning numerous other charges billed to their account. On January 30, 2014, they sent a RESAP [sic] letter to Carrington. They never received a response. They initiated their suit on May 30, 2014, in part to avoid foreclosure on their

---

[3] Plaintiffs do not object to the Magistrate Judge's recommendation that the Court grant Defendant Carrington's Motion for Summary Judgment with respect to their pendent state law claims.

[4] In addition, the cases relied upon by the Hawks in support of their damages claim, *Marais v. Chase Home Fin. LLC*, 736 F.3d 711 (6th Cir. 2013) and *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338 (E.D. Pa. 2013), are inapposite. In *Marais*, the Sixth Circuit held that the plaintiff "sufficiently alleged damages flowing from the servicer's response," and thus sufficiently stated a claim for damages. *Id.* at 713. Similarly, *Benner* was decided on a motion to dismiss. However, unlike *Marais* and *Benner*, Plaintiffs have failed to allege damages flowing from Carrington's response (or lack thereof). Moreover, the procedural posture of this case required more than mere allegations of damages; the Hawks were required to come forth with sufficient evidence in support of its damages claim in order to survive summary judgment.

home. By September 19, 2014, Christiana began state court foreclosure proceedings against them seeking payment of the full amount of the disputed funds. While the Hawks have not paid the invoices, they have been litigating this separate suit and the unexplained fees and 'corporate advances' that Christiana is seeking in the foreclosure action has increased phenomenally. All this flows from Carrington failing to provide the Hawks with a statutorily required response.

(Doc. 50, at 2-3).

A review of the record leads the Court to conclude that the Hawks failed to adequately allege RESPA damages, let alone present sufficient evidence of damages to survive a motion for summary judgment. *See Jobe v. Bank of Am., N.A.*, Civil Action No. 3:10-1710, 2013 WL 1402970, at *7 (M.D. Pa. Apr. 5, 2013) (concluding that Plaintiffs "broad allegations of damages . . . are not adequate to establish the type of specific actual damages" required under RESPA). The Court agrees with the Magistrate Judge, who correctly rejected the Hawks' arguments and found that Carrington's Motion For Summary Judgment should be granted because the Hawks "have failed to show a direct causal connection between any alleged failure to respond to this written request and financial injuries suffered by the plaintiffs."[5] (Doc. 47, at 8). Accordingly, the Court will overrule Plaintiffs' Objections to the Second R&R.

---

[5] Plaintiffs requested "[a]ctual damages equaling the interest charged on the Mortgage on or about November 1, 2013, the date that Plaintiffs requested documentation needed to withdraw funds and become current on the mortgage." (Doc. 1, at 9). But, as Plaintiffs note, it was not until "January 30, 2014" that "counsel, on behalf of the Plaintiffs, sent correspondence to Carrington pursuant to the Real Estate Settlement Procedures Act. . . ." (*Id.* at 8). Accordingly, Plaintiffs claimed actual damages (occurring in November 2013) could not be caused by Carrington's alleged failure to respond to the January 2014 Qualified Written Request.

7

Turning to Defendant Carrington's Limited Objection to the Magistrate Judge's *sua sponte* suggestion that the Court may wish to grant the Hawks an opportunity to amend their complaint, (Doc. 49), the Court agrees with the Defendant. At this stage of the litigation, where discovery has been closed and motions for summary judgment filed, Plaintiffs should not be permitted an opportunity to amend their complaint. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) ("When a party delays in making a motion to amend until after summary judgment has been granted to the adverse party . . . the interests in judicial economy and finality of litigation may become particularly compelling."); *see also Bonilla v. City of York, Pennsylvania*, No. 1:14-CV-2238, 2016 WL 3165619, at *6 (M.D. Pa. June 7, 2016) ("When a plaintiff files a motion to amend after the filing of defendant's motion for summary judgment, the timing raises an inference that the plaintiff is attempting to bolster his legal position — and thereafter avoid summary judgment — by amending the complaint. This is an unacceptable reason to amend.") (internal citation and quotation marks omitted). And, notably, Plaintiffs have not moved for leave to amend their complaint. Accordingly, the Court will sustain Defendant Carrington's Limited Objection and Plaintiffs will not be permitted to amend their complaint. A separate order follows.

Robert D. Mariani
United States District Judge